OPINION
{¶ 1} Mark A. Whitaker pled no contest to possession of cocaine, a fifth degree felony, after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The trial court found him guilty, and it sentenced him to five years *Page 2 
of community control and a six-month driver's license suspension. Whitaker appeals from the trial court's judgment, claiming that the trial court erred in denying his motion to suppress. For the following reasons, the judgment will be affirmed.
 {¶ 2} Dayton police officer Mitch Olmsted provided the sole testimony during the hearing on Whitaker's motion to suppress, which revealed the following facts.
 {¶ 3} At 7:37 a.m. on Saturday, April 21, 2007, Olmsted was dispatched to a Shell gas station at 3406 East Third Street in Dayton on a report that a male in a multicolored S-10 pick-up truck was passed out and unconscious. The call was dispatched as a "priority one" call, which is an emergency run where the officer activates his siren and overhead lights.
 {¶ 4} When Olmsted arrived at the gas station, he located the S-10 parked at "a funny angle" by an entrance to the station, partially blocking it. The vehicle was turned off, and Whitaker was the only person in the truck. Olmsted parked behind the truck and ran the vehicle's license plate. Olmsted learned that the driver had a drug history.
 {¶ 5} Olmsted then approached the S-10 from the passenger side and walked in front of the vehicle to the driver's side. Whitaker was slumped down in the seat, but he was awake. When Olmsted reached Whitaker, he asked him what he was doing there and told him that he wanted "to make sure he was okay." Whitaker responded that he had run out of gas and, after talking for a few more minutes, Whitaker indicated that he was waiting for his girlfriend to get off the bus. Whitaker did not know any details, such as the bus number or from where she was coming. Due to the nature of the dispatch, Whitaker's drug history, and the fact that Whitaker "changed his story *Page 3 
twice as to what he was doing there," Olmsted believed that Whitaker was "quite possibly impaired." Olmsted did not detect an odor of alcohol or any illegal substance. Olmsted stated that Whitaker was not oriented when he first arrived, but Whitaker became more awake as they talked.
 {¶ 6} Olmsted asked Whitaker to exit his vehicle so the officer could check his coordination. Olmsted intended to administer a field sobriety test. When Whitaker exited the vehicle, however, Olmsted noticed several small pieces of crack cocaine. Olmsted placed Whitaker in his cruiser and performed a field test with cobalt reagent on the crack cocaine. The test result was positive. Olmsted read Whitaker his Miranda rights, and Whitaker waived his rights. Whitaker subsequently made incriminating statements.
 {¶ 7} At the conclusion of the hearing, the trial court overruled Whitaker's motion to suppress. The court stated:
 {¶ 8} "Based upon the nature of the dispatch, the way the vehicle was parked in the Shell parking lot, the suspicions raised at the time by — in the officer by the nature and tenor of the conversation, running the plate, the learning about drug histories and otherwise the totality of the circumstances; and further, based upon the undisputed evidence that the defendant was found slumped over in the driver's seat of the vehicle, the Court finds that there was a reasonable, articulable suspicion of criminal activity or of a traffic offense on which to investigate further, including to remove the defendant from the vehicle. At which point, of course, the Court finding that the officer was sufficiently experienced on the street and recognizing various drugs in plain view was crack cocaine, the Court finds that the officer therefore in recognizing *Page 4 
that drug to seize it and field-test it and at that point had sufficient cause to arrest the defendant and administer rights, which the Court finds that he did. And the Court finds that under the circumstances the defendant understood and voluntarily waived his rights and gave statements.
 {¶ 9} "Accordingly, the Court overrules the Motion to Suppress and wonders out loud, rhetorically and academically, how differently counsel would like this officer to have acted under the circumstances. I don't expect an answer."
 {¶ 10} An entry adopting the trial court's oral ruling was filed. As stated above, Whitaker subsequently pled no contest to the charges, was found guilty, and was sentenced accordingly. Whitaker appeals, raising one assignment of error.
 {¶ 11} Whitaker's sole assignment of error states:
 {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS BECAUSE IT WAS UNREASONABLE FOR THE OFFICER TO DETAIN AND ORDER THE DEFENDANT OUT OF A VEHICLE WITH NO BASIS TO BELIEVE THE DEFENDANT COMMITTED A CRIME."
 {¶ 13} On appeal, Whitaker claims that Officer Olmsted lacked a reasonable basis to detain him and order him out of his truck. Whitaker notes that he was not unconscious when the officer approached. Rather, Whitaker was awake when Olmsted approached and he became progressively more awake as they talked. Whitaker emphasizes that there was no indication of criminal activity — no odor of illegal drugs, no observation of illegal drugs, no weapons, no odor of alcohol, no suspended driver's license, no notation of violence in a field interview contacts report, and no expired license plates. *Page 5 
 {¶ 14} The State responds that the circumstances warranted an investigatory stop of Whitaker. The State emphasizes that Olmsted was dispatched to the scene on a report that the driver was unconscious, Whitaker was slumped in his seat when Olmsted arrived, the vehicle was partially blocking the entrance to the gas station, and Olmsted learned that Whitaker had a history of using drugs. Olmsted believed that Whitaker gave inconsistent stories to explain his presence at the gas station. The State asserts that Olmsted was entitled to ask Whitaker to step out his vehicle as part of the investigatory stop.
 {¶ 15} Upon review of the evidence, we agree with the State that Olmsted was justified in detaining Whitaker while he ascertained Whitaker's condition. As the State notes, the officer was dispatched to the gas station on a report of an unconscious individual in a truck. At the scene, the officer located the truck parked at a "funny angle" so that it partially blocked an entrance and he saw the driver slumped in his seat. Before approaching the truck, the officer learned that Whitaker had a history of drugs. Although Whitaker was not unconscious as Olmsted approached the truck, it appeared that Whitaker had just awakened and was initially disoriented. Moreover, although there were no odors of drugs or alcohol, Olmsted had a reasonable basis to believe that Whitaker might be impaired so as to justify briefly detaining Whitaker while he ascertained his condition.
 {¶ 16} When an individual in a motor vehicle is lawfully detained, a police officer may order the driver out of the vehicle, even though the officer does not suspect that the driver has engaged in criminal activity and the officer cannot articulate a reasonable suspicion that prompted the action. Pennsylvania v. Mimms (1977), 434 *Page 6 
U.S. 106, 111, 54 L.Ed.2d 331, 337, 98 S.Ct. 330; State v. Evans, 67 Ohio St.3d 405, 1993-Ohio-186, 618 N.E.2d 162.
 {¶ 17} Because Whitaker was being lawfully detained, Olmsted was entitled to ask him to exit the vehicle. Once Whitaker exited the truck, the crack cocaine on the driver's seat was in plain view. At that juncture, the officer had probable cause to arrest Whitaker for possession of cocaine. (Because Olmsted did not conduct field sobriety tests, we need not address whether the officer had sufficient cause to conduct such tests.) The record indicates that Olmsted informed Whitaker of his Miranda rights and that Whitaker waived those rights. Accordingly, we find no error in the trial court's denial of Whitaker's motion to suppress.
 {¶ 18} The assignment of error is overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1